UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LAUREN Y. JACKSON,                    )
                                      )
                Plaintiff,            )
                                      )
        v.                            )      No.  4:04CV821 FRB
                                      )
JO ANNE B. BARNHART, Commissioner     )
of Social Security,                   )
                                      )
                Defendant.            )


**MEMORANDUM AND ORDER**

        This cause is before the Court on plaintiff's appeal of
an adverse ruling of the Social Security Administration.    All
matters are pending before the undersigned United States Magistrate
Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I.  Procedural History**

        On September 17, 1997, the Social Security Administration
(SSA) determined that plaintiff Lauren Y. Jackson was disabled due
to epilepsy, with an onset date of June 1, 1997, and awarded
plaintiff benefits on her application for Supplemental Security
Income (SSI) pursuant to Title XVI of the Social Security Act.
(Tr. 31.)   In a letter dated March 8, 2002, the SSA notified
plaintiff that it had determined that as of March 1, 2002, her
condition had improved to such a degree to render plaintiff no
longer disabled, and thus informed plaintiff that payments of SSI
benefits would cease.   (Tr. 54-57.)   Upon plaintiff's request for
reconsideration, the matter was presented to a Disability Hearing

Officer who conducted a hearing on August 20, 2002, at which plaintiff was present. The hearing officer issued a written decision on August 21, 2002, finding medical improvement; and on August 22, 2002, the SSA denied plaintiff's request for reconsideration. (Tr. 61-74.) At plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on November 13, 2003, at which plaintiff and a vocational expert testified. (Tr. 352-67.) On January 28, 2004, the ALJ issued a decision in which she determined plaintiff's disability to have ceased in March 2002. (Tr. 12-21.) On May 21, 2004, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 5-7.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Hearing Before the ALJ

A.  Plaintiff's Initial Testimony

At the hearing on November 13, 2003, plaintiff proceeded without counsel and testified in response to questions posed by the ALJ.

At the time of the hearing, plaintiff was forty-two years of age. (Tr. 356.) Plaintiff is not married. Plaintiff has three children, ages twenty-four, thirteen and twelve. The two younger children live with plaintiff. (Tr. 357.) Plaintiff has a high school education. Plaintiff has no vocational training nor engaged in military service. Plaintiff testified that she was not

currently working and was last employed in 1982. (Tr. 358.) Plaintiff's Work History Report, submitted in 1996 in relation to her previous application for benefits, shows plaintiff to have worked as a Certified Nurses Technician from 1986 to 1989. (Tr. 134-37.)

Plaintiff testified that her treating physicians were Dr. Bateman, a neurologist; Dr. Johnson, a general physician; and Dr. Crossover, a gynecologist. Plaintiff testified that she had not been hospitalized during the previous year. (Tr. 358.) Plaintiff testified that her physicians have instructed her not to drive or ride bicycles; and to try not to ride the bus alone, to try to have someone with her if she goes somewhere, to try not to reach for anything, and to sit down if she becomes dizzy. (Tr. 358-59.)

Plaintiff testified that she is being treated for depression, seizures, headaches, and pains. Plaintiff testified that medications taken for all of her conditions somewhat help. (Tr. 359.) Plaintiff testified that she experiences no side effects from her medications. (Tr. 360.) Plaintiff testified that she has not had a seizure since May, but that she does not know when one will come on. (Tr. 359.)

As to her daily activities, plaintiff testified that she wakes at 5:30 or 6:00 a.m. and gets dressed and ready so that she may help her children get ready for school. Plaintiff testified that once her children are at school, she cleans the house and

makes sure "everything's cleaned and kept up." Plaintiff testified that she then has coffee, sits for a while and then starts her housework, which includes laundry, cleaning her children's rooms and her room. (Tr. 360-61.) Plaintiff testified that she sometimes watches her neighbor's children because she likes to take care of children. Plaintiff testified that she reads, writes and watches a lot of television. Plaintiff testified that she may lie down, sit outside or go for a short walk. Plaintiff testified that her oldest daughter takes her grocery shopping, but that sometimes she waits until the children are home from school and they all go shopping together. (Tr. 361.)

B.    Testimony of Vocational Expert

Dr. W. Glenn White testified at the hearing as a vocational expert. The ALJ asked Dr. White to assume a claimant of the same age and education as plaintiff, and to assume such a person to have no past relevant work. Dr. White was asked to further assume the claimant to have a seizure disorder, to have a medium residual functional capacity, and to not be required to climb ladders, ropes or scaffolds. Dr. White was asked to assume that the claimant must avoid hazardous machinery and heights, and that she could not take public transportation alone. In response, Dr. White testified that with the transportation limitation, there would not be any jobs available for such a claimant to perform. (Tr. 362.) The ALJ then asked Dr. White to assume that the

claimant would be able to obtain a ride to work, to which Dr. White testified that there would be jobs available at the medium level of work, including approximately 2000 assembler jobs, 1000 packer jobs and 10,000 janitorial jobs in the St. Louis Metropolitan area. (Tr. 362-63.)

C.    Plaintiff's Supplemental Testimony

Subsequent to the vocational expert's testimony, plaintiff continued in her testimony. Plaintiff testified that she began having seizures when she was pregnant with one of her children. (Tr. 363.) Plaintiff testified that during such time, she fell on occasion and struck her head which has caused her to currently suffer memory loss. (Tr. 363-64.) Plaintiff testified that the condition causes her to sometimes go into a daze. (Tr. 364.) Plaintiff testified that she has headaches everyday. (Tr. 366.)

Plaintiff testified that she was also involved in an incident whereupon she received third degree burns on her right hand which has resulted in a loss of some feeling in the hand and partial trouble with using the hand.[1] (Tr. 363.) Plaintiff testified that she can continue to write. (Tr. 364.)

Plaintiff testified that she recently fell without warning when she reached to pick up a newspaper. Plaintiff

---

[1]Plaintiff's Pain Report, submitted in 1996 in relation to her previous application for benefits, shows plaintiff to have sustained this injury prior to her previous application. (Tr. 128.)

- 5 -

testified that her legs sometimes give way while she walks or is going down steps and that she sometimes falls as a result. (Tr. 364.) Plaintiff testified that Dr. Johnson wanted to schedule more tests "to find out what's going on" and that she was to call Dr. Johnson upon the conclusion of the hearing. Plaintiff testified that she sees Dr. Johnson at the Forest Park Medical Clinic. (Tr. 365.)

Plaintiff testified that she has additional stress on account of her upcoming medical tests and the recent deaths of her mother and best friend, and was surprised that she had not had a seizure. (Tr. 365-66.) Plaintiff testified that her seizures can come on any time and that she has had seizures in the store, on the street and in her backyard. (Tr. 366.)

### III.  Medical and Disability Records

On September 17, 1997, the Social Security Administration determined plaintiff's epilepsy condition to meet the criteria of Listing 11.02A,[2] with an onset date of such disabling condition determined to be June 1, 1997. (Tr. 31.)

On November 30, 2001, plaintiff completed a Report of Continuing Disability. (Tr. 187-94.)  It was noted that

---

[2]To meet Listing 11.02A (Epilepsy)in 1997, a claimant must have "major motor seizures (grand mal or psychomotor), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treat-ment.  With . . . [d]aytime episodes (loss of consciousness and convulsive seizures)[.]"

plaintiff's disability began on June 1, 1997, and that she was currently receiving benefits for her disabling condition of epilepsy. Plaintiff reported that there had been no change in her disabling condition and that she currently suffered from the additional impairments of depression and severe headaches. Plaintiff reported that she felt unable to return to work and that no doctor had advised her that she was able to return. (Tr. 187.) Plaintiff reported that she had performed no work since becoming disabled. (Tr. 191.) Plaintiff reported that she had not seen a doctor during the previous twelve months. (Tr. 188.) Plaintiff reported that since the onset of her disability, that is, since June 1, 1997, plaintiff had been hospitalized at Barnes-Jewish Hospital in August 1999 to undergo a hysterectomy. With respect to out patient visits, plaintiff reported that she visits on an "as needed" basis, with her next appointment scheduled for December 7, 2001. (Tr. 189.) Plaintiff reported that she was advised by Jewish Hospital to stay calm and avoid stress. (Tr. 190.) Plaintiff reported that she takes a walk every day, takes care of her personal needs, and cooks and cleans on her own. (Tr. 190-91.) Plaintiff reported that she does not go out alone and does not drive, and that someone helps her with the shopping. As to recreational activities, plaintiff reported that she watches television, listens to the radio and reads. (Tr. 191.)

On December 7, 2001, plaintiff visited Dr. Feren at the

Barnes-Jewish Hospital Neurology Clinic for follow up of her seizure disorder. (Tr. 311-12.) Plaintiff's twelve-year history of seizures was noted with plaintiff describing a feeling of nausea and dizziness followed by loss of consciousness and occasional tongue trauma. It was noted that plaintiff had burned her right hand during a seizure in the past. Plaintiff reported having no other aura. Dr. Feren noted that plaintiff's last seizure was three years ago. It was noted that plaintiff was currently taking Topamax.[3] Plaintiff reported that she was being followed by another doctor for headaches, which were noted to be very uncommon in frequency. It was noted that plaintiff's headaches had some migraine features, but that they were well controlled on current medications. In addition to Topamax, plaintiff's current medications were noted to be Celexa,[4] Naprosyn[5] and Butalbital.[6] Motor examination showed plaintiff to have normal power and tone in all four extremities. Plaintiff had decreased light touch sensation to the right hand. Plaintiff's gait was normal. Dr.

_____

[3]Topamax is indicated as adjunctive therapy for adults with partial onset seizures, or primary generalized tonic-clonic seizures. Physicians' Desk Reference 2391-93 (55th ed. 2001).

[4]Celexa is indicated for the treatment of depression. Physicians' Desk Reference 1258 (55th ed. 2001).

[5]Naprosyn (Naproxen) is indicated for the treatment of rheumatoid arthritis, osteoarthritis, ankylosing spondylitis, and for the management of pain. Physicians' Desk Reference 2744-45 (55th ed. 2001).

[6]Butalbital is indicated for the relief of tension headache. Physicians' Desk Reference 540 (55th ed. 2001).

Feren concluded that plaintiff's seizure disorder was very stable with plaintiff tolerating Topamax well. Plaintiff was instructed to continue with Topamax and to take pain medications as needed "as long as [headache] frequency is low. Otherwise consider prophylactic medication." Plaintiff was instructed to follow up in one year or as needed. (Tr. 312.)

In a letter dated December 24, 2001, Barnes-Jewish Hospital reported to disability determinations that it had no records for plaintiff for the treatment date requested. (Tr. 197.)

On January 10, 2002, plaintiff completed a Disability Questionnaire in which she reported that she has seizures and has had several severe falls resulting in bumps to her head. Plaintiff also reported that she has arthritis in her legs. Plaintiff reported that stress, anger and depression aggravate her symptoms. (Tr. 198.) Plaintiff reported that she has no difficulty preparing meals or following directions. Plaintiff reported that she does the "usual" household chores and needs no help with them, other than that she is unable to lift or move heavy objects. (Tr. 199-200.) Plaintiff reported that she goes out of her home every day and either walks, rides the bus or obtains a ride from someone. Plaintiff does no shopping. (Tr. 200.) Plaintiff reported that she was last seen by Dr. Feren at the Neurology Clinic on December 7. (Tr. 201.)

In a Pain Questionnaire completed January 10, 2002,

plaintiff reported that she has aching, sharp and throbbing pain in her head, side, abdomen, and lower back. Plaintiff reported that stress, anger and depression precipitate the pain, but that the pain does not restrict her physical movements in any way. Plaintiff reported that her medications include Naproxen, Butalbital and Topamax. Plaintiff also reported that she has seizures, but that she had not had a seizure in three years. (Tr. 202.)

In a Report of Contact with disability determinations dated March 6, 2002, it was noted that plaintiff reported that she had received a diagnosis of depression "years ago" and received treatment through Barnes-Jewish Hospital. Plaintiff could not recall when her last "official visit" took place. Plaintiff reported that she had taken Celexa but that she has not taken the medication since she ran out of it. When it was suggested that plaintiff undergo a psychological consultative examination, plaintiff said "no" and that she would see only her current physicians. Plaintiff also reported that her depression was not a condition which would preclude work and that her depression is secondary to her seizure disorder. (Tr. 203.)

On March 6, 2002, Dr. Melinda Fabito, a reviewing, non-examining physician, reviewed Dr. Feren's treatment notes of December 7, 2001, and opined that "significant medical improvement ha[d] occurred" in that plaintiff's seizure disorder was stable and

controlled with Topamax and that plaintiff tolerated the medication well; that plaintiff has had no seizures in three years; and that plaintiff's headaches were infrequent and she obtained relief therefrom with medication, therefore indicating that such headaches are controlled with medication. Dr. Fabito also noted that plaintiff was instructed to follow up with her doctor in one year, or on an "as needed" basis. (Tr. 313.)

On March 7, 2002, Dr. Ofelia E. Gallardo, a reviewing, non-examining physician, completed a Psychiatric Review Technique Form (PRTF) for disability determinations. (Tr. 314-27.) In the PRTF, Dr. Gallardo opined that plaintiff had no medically determinable impairment. (Tr. 314.) In making this determination, Dr. Gallardo reviewed the evidence of record and specifically noted there to be no diagnosis of depression made by a treating source and that Elavil had been prescribed as a co-adjunct for pain and not for depression. (Tr. 326, 327.)

On March 8, 2002, the Social Security Administration determined to cease payment of plaintiff's disability benefits due to medical improvement. (Tr. 54-57.)

In a Reconsideration Report for Disability Cessation dated May 8, 2002, plaintiff reported that she last saw Dr. Feren on December 7, 2001, at Barnes Hospital for a regular check up and received medication for her head. (Tr. 206-07.) Plaintiff reported that she is not restricted in her personal mobility or in

taking care of her personal needs and/or grooming. Plaintiff reported that she has social contact with her daughters but that her family causes her stress which causes more seizures. Plaintiff reported that she is not allowed to drive or to ride a bike, but that she takes public transportation by herself. Plaintiff reported that when she does so, she informs people as to where she is going and when she arrives "just in case something happens." (Tr. 208.)

In a Claimant Questionnaire dated June 6, 2002, plaintiff reported that she sometimes feels drained and weak and that pressure and stress bring on her symptoms. Plaintiff reported that between January and May 2002, she had experienced six seizures and that on June 5, 2002, she experienced two seizures. Plaintiff reported that she takes Topamax as prescribed by Dr. Feren for the condition. (Tr. 217.) Plaintiff reported having sleeping difficulties. Plaintiff reported that someone needs to go with her when she shops and that she sometimes needs directions repeated to her. (Tr. 218.) Plaintiff reported that she leaves her home to take her children to school, to walk and to sit outside, but that she is out of her home for only minutes. Plaintiff reported that she has suffered a seizure while away from home. (Tr. 219.) Plaintiff reported that she does not get along with most of her family members. With respect to activities, plaintiff reported that she cares for neighborhood children. (Tr. 220.)

On July 17, 2002, Dr. Stephen J. Kelly, a reviewing, non-examining physician, reviewed the medical evidence of record as well the various disability records submitted to the Social Security Administration and opined thereon:

> I find it suspect that the claimant has had no seizures for 3 years by her own admission through 1/10/2, and after denial now reports 8 seizures that must have occurred since 1/10/2. It is also concerning that the claimant did not mention recurrent seizures during the 3/6/2 ROC [Report of Contact]. Finally, I would expect someone who has been seizure free for 3 years; been followed long term by Washington U. Neurology; and now has had a marked increase in seizures to return to, or at least contact her neurologist for re-evaluation.

(Tr. 328.)

On July 18, 2002, Dr. Charles A. Pap, a reviewing, non-examining physician, completed a PRTF for disability determinations wherein he opined that plaintiff had no medically determinable impairment. (Tr. 330-43.) In making this determination, Dr. Pap noted plaintiff not to be receiving any current treatment for depression and, further, that plaintiff had not been to a hospital or emergency room for the condition. (Tr. 342.)

In her Request for Hearing submitted to the Social Security Administration on September 20, 2002, plaintiff reported that there had been no change in her condition since May 8, 2002, and that she had not been treated or examined by a physician since

that time, nor had she been hospitalized or treated at a clinic. (Tr. 224-25.)

On December 12, 2003, Forest Park Hospital informed disability determinations that it had no records for plaintiff from 1996 to the present. (Tr. 346-48.)

### III. The ALJ's Decision

The ALJ found that plaintiff was not engaged in substantial gainful activity. The ALJ found plaintiff to have a severe impairment but that such impairment did not meet or medically equal an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Part 404. The ALJ found plaintiff's allegations regarding her limitations not to be totally credible. (Tr. 20.) The ALJ found plaintiff to be able to lift fifty pounds occasionally and twenty-five pounds frequently; and to sit, stand and walk about six hours of an eight-hour work day. The ALJ determined that plaintiff should avoid climbing ladders, ropes and scaffolds, and should avoid exposure to hazards such as moving machinery and unprotected heights. The ALJ concluded that plaintiff could perform her past relevant work. The ALJ further found that given plaintiff's age, education, past relevant work, residual functional capacity, and transferable skills, Medical-Vocational Rules 203.29-203.31 of Table 3, Appendix 2, Subpart P of 20 C.F.R. Part 404 would direct a finding that plaintiff could also perform other work existing in significant numbers, with such finding supported by the testimony

of the vocational expert.  The ALJ thus concluded that plaintiff's disability ceased in March 2002.  (Tr. 21.)

## IV.  Discussion

For claimants previously determined to be under a disability and thus awarded disability benefits, the Social Security Administration conducts continuing disability reviews to determine whether or not the claimant continues to meet the disability requirements of the law.  20 C.F.R. § 416.990(a).  The critical question is whether the claimant's physical condition has improved since the prior award of disability benefits and, if so, whether such medical improvement is related to the claimant's ability to work.  20 C.F.R. § 416.994(b)(2)-(5); see also Nelson v. Sullivan, 946 F.2d 1314, 1315 (8th Cir. 1991) (per curiam).  "Medical improvement" is any decrease in the medical severity of the claimant's impairments which were present at the time of the most recent favorable medical decision that the claimant was disabled.  20 C.F.R. § 416.994(b)(1)(I).

The Commissioner engages in a defined evaluation process when conducting a review for continuing disability.  20 C.F.R. § 416.994(f).  The Commissioner begins this evaluation process by deciding whether the claimant is engaged in substantial gainful activity.  If so, the claimant's disability will be found to have ended.  Next, the Commissioner decides whether the claimant has an impairment or combination of impairments which meets or is equal to

one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If so, the disability will be found to continue.  If the claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner then determines whether there has been a medical improvement as shown by a decrease in medical severity and, if so, whether the medical improvement is related to the claimant's ability to perform work.  If the medical improvement is related to the claimant's ability to work, the Commissioner must determine whether all of the claimant's current impairments are severe, meaning that which significantly limits her ability to do basic work activities.  If the impairment(s) is found to be severe, the Commissioner assesses the claimant's ability to engage in substantial gainful activity, and specifically, assesses the claimant's residual functional capacity and considers whether the claimant can perform her past relevant work or other work.  If the claimant is found to be able to perform any such work, the disability will be found to have ceased.  20 C.F.R. § 416.995(f)(1)-(8).  If at any point in the evaluation process the Commissioner determines there to be sufficient evidence to find the claimant still unable to engage in substantial gainful activity, the review ceases and benefits may continue.  20 C.F.R. § 416.995(f).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42

U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Estes v. Barnhart</u>, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1147 (8th Cir. 2001). If substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. <u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001).

In this appeal of the Commissioner's final decision, plaintiff argues only that the ALJ failed to adequately discharge her duty to fully and fairly develop the record and therefore erred in affirming the cessation of benefits on an incomplete record. Plaintiff fails to identify, however, what additional evidence the ALJ should have but failed to obtain, and fails to show how such additional evidence would have added to the record evidence before the ALJ at the time of her decision.

The ALJ has a duty to develop the facts fairly and fully, particularly where the claimant is unrepresented by counsel.[7] <u>Driggins v. Harris</u>, 657 F.2d 187, 188 (8th Cir. 1981). "There is no bright line test for determining when the [Commissioner] has .

_____

[7]Plaintiff was not represented by counsel during her hearing before the ALJ. Counsel represented plaintiff at the Appeals Council level, however (Tr. 8, 10), and continues to represent plaintiff in the instant cause before this Court.

. . failed to develop the record. The determination in each case must be made on a case by case basis." <u>Battles v. Shalala</u>, 36 F.3d 43, 45 (8th Cir. 1994) (internal quotation marks and citations omitted). "'Unfairness or prejudice resulting from an incomplete record -- whether because of lack of counsel or lack of diligence on the ALJ's part -- requires a remand.'" <u>Id.</u> at 45 n.2 (quoting <u>Highfill v. Bowen</u>, 832 F.2d 112, 115 (8th Cir. 1987)). The relevant inquiry, however, is whether the claimant was prejudiced or treated unfairly by how the ALJ did or did not develop the record. <u>Onstad v. Shalala</u>, 999 F.2d 1232, 1234 (8th Cir. 1993). "[A]bsent unfairness or prejudice, we will not remand." <u>Id.</u>; <u>see also</u> <u>Shannon v. Chater</u>, 54 F.3d 484, 488 (8th Cir. 1995).

In this cause, the ALJ underwent the required sequential evaluation process in determining whether plaintiff sustained medical improvement, whether such improvement related to her ability to do work, and whether her improvement was to such a degree as to render her no longer disabled. With respect to plaintiff's previously established disability, the ALJ noted that a Neurological Assessment performed in September 1997 showed plaintiff to have had an epilepsy condition which met Listing 11.02A.[8] Addressing plaintiff's current impairments, the ALJ noted

---

[8]As noted <u>supra</u> at n.2, to meet this Listing, a claimant must have "major motor seizures (grand mal or psychomotor), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treat-ment. With . . . [d]aytime episodes (loss of consciousness and

that in December 2001, plaintiff's treating physician reported plaintiff not to have had seizures for three years, and that the medical evidence showed plaintiff's condition to be well controlled with medication. "Impairments that are controllable or amenable to treatment do not support a finding of total disability." Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999). The ALJ further noted that despite plaintiff's claim of increased and repeated seizure activity between January and June 2002, as well as plaintiff's testimony that she last suffered a seizure in May 2003, plaintiff neither sought nor received any medical treatment for such alleged seizures at any time in 2002 or 2003. "[A] failure to seek treatment may indicate the relative seriousness of a medical problem" and may be inconsistent with a finding of disability. Shannon, 54 F.3d at 486. In addition, the medical evidence shows plaintiff's headaches to be infrequent and controlled by medication as well, and that plaintiff sought no treatment for any increase in the severity of the headaches despite Dr. Feren's suggestion that plaintiff seek alternative treatment in the event the headaches worsen. Hutton, 175 F.3d at 655 (condition controlled by medication); Shannon, 54 F.3d at 486 (failure to seek treatment). As to plaintiff's claim of depression, the ALJ properly noted that the evidence failed to show plaintiff to have ever received treatment for such condition and, to the extent plaintiff was

convulsive seizures)[.]"

previously prescribed medication therefor, she no longer took the medication.  See Shannon, 54 F.3d at 486 (failure to seek treatment); Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (failure to follow prescribed treatment without good cause may be basis for denying disability).  In addition, the ALJ conducted the analysis required under 20 C.F.R. § 916.920a in determining mental impairments and found plaintiff's alleged mental impairment not to effect her ability to perform basic work activities.  (Tr. 18.)

To the extent plaintiff claims the ALJ failed to develop the record by failing to adequately seek medical evidence of plaintiff's treatment, the record shows, and the ALJ noted, that evidence of plaintiff's medical treatment was indeed sought by the Social Security Administration, but none existed other than Dr. Feren's December 2001 treatment notes.  To the extent plaintiff complains that the ALJ misdirected her efforts to obtain such evidence by directing her inquiries to Forest Park Hospital rather than the Barnes-Jewish Clinics (Pltf.'s Brief at 6-7), the undersigned first notes that it was plaintiff herself who informed the ALJ at the hearing that she was anticipating a visit to Dr. Johnson at Forest Park subsequent to the hearing.  (See Tr. 365.) In addition, a review of the record shows the Commissioner to have indeed sought information from the Barnes-Jewish Clinics (Tr. 310), but that no records were located other than the December 2001 treatment notes from Dr. Feren (Tr. 197, 311-12).  Further, the

plaintiff has presented no evidence or argument, either to the Appeals Council or to this Court, demonstrating that she indeed sought and obtained medical treatment for her impairment(s) during the relevant time period, nor did plaintiff proffer any such medical evidence to either tribunal. See Weber v. Barnhart, 348 F.3d 723, 725-26 (8th Cir. 2003) (addressing claim that ALJ failed to obtain certain medical reports, Eighth Circuit noted that the claimant "certainly could have obtained these records during the appellate process and demonstrated that they were such that a remand to the ALJ was necessary."); Middlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000) (plaintiff made no effort to provide any medical evidence to support claim of disability); see also 20 C.F.R. § 416.993(b) (duty of claimant to provide medical evidence to aid in determination of continuing disability). In the absence of such evidence or proffer, plaintiff cannot show that the additional medical reports, if any, would have added to the medical records already in evidence and before the ALJ at the time of her decision. See Weber, 348 F.3d at 725. Without such a showing, plaintiff cannot demonstrate that she was prejudiced by the ALJ's failure to obtain and consider any additional records. See Shannon, 54 F.3d at 488.

The undersigned notes that plaintiff complains that the ALJ failed to fulfill her duty to develop a complete record by failing to provide plaintiff the opportunity to review the exhibits

of record at the time of the hearing. Plaintiff specifically refers to her statement to the ALJ before the commencement of the hearing that she did not have the opportunity to see all of the exhibits. (Pltf.'s Brief at 6; Tr. 355.) Plaintiff's argument fails to acknowledge, however, that the ALJ invited plaintiff to "stay after the hearing and go back through the file," telling her that she was "perfectly welcome to do that." (Tr. 356.) Whether plaintiff indeed undertook such review is unknown. Nevertheless, as set out above, plaintiff has failed to demonstrate that any alleged inadequacies of the evidence which was before the ALJ when she rendered her decision had any prejudicial effect.

Finally, plaintiff raises the following argument to support her position that the record was inadequately developed:

> [T]his matter could have been addressed had the transcript and tape recording been sent to plaintiff's counsel as requested. Plaintiff's counsel requested, from the Appeals Council, after the appeal had been filed, a copy of the tape recording and complete administrative transcript. It does not appear based upon the evidence of record that said tape recording or file was forwarded to plaintiff's counsel for review.

(Pltf.'s Brief at 8.)

While plaintiff was certainly permitted to request and receive the administrative transcript and a copy of the hearing transcript, 20 C.F.R. § 416.1474, she nevertheless continues to fail to show how she was prejudiced by the failure to provide such material, or how

such failure rendered the Commissioner's decision itself unfair. As set out above, plaintiff has presented nothing to this Court demonstrating that the material and information before the ALJ at the time of her decision was incomplete or that the ALJ failed to make reasonable effort to obtain medical evidence. "[U]pon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record," this Court enjoys the authority to remand matters to the Commissioner for such additional evidence to be taken. 42 U.S.C. § 405(g); <u>Geigle v. Sullivan</u>, 961 F.2d 1395 (8th Cir. 1992). Assuming <u>arguendo</u> that the Appeals Council's failure to provide plaintiff with the requested transcripts constitutes good cause for failure to submit additional medical evidence, plaintiff's bare assertion that additional evidence should have been obtained, with nothing more, provides the Court no basis upon which to determine whether any such additional evidence is material to plaintiff's claim of continuing disability. <u>Geiger</u>, 961 F.2d at 1397. The plaintiff's unsuccessful attempt to obtain the record and transcript at the Appeals Council level, albeit unfortunate, does nothing to change the fairness of the ALJ's decision.

The evidence before the Court shows the Commissioner to have made every reasonable effort to obtain medical reports relating to plaintiff's continuing disability. <u>See</u> 20 C.F.R. §§ 416.993(b), 416.912(d)(1). Plaintiff has failed to show how she

was prejudiced or treated unfairly by how the ALJ did or did not develop the record. Accordingly, remand for further development of the record is not warranted. <u>Shannon</u>, 54 F.3d at 488; <u>Onstad</u>, 999 F.2d at 1234. Nor is remand appropriate where plaintiff fails to show that there exists new and material evidence relevant to the Commissioner's determination which should be presented to the Commissioner for further consideration. 42 U.S.C. § 405(g).

Therefore, for all of the foregoing reasons, the plaintiff's claim that the ALJ failed to adequately discharge her duty to fully and fairly develop the record should be denied, and the Commissioner's decision upholding the cessation of plaintiff's disability benefits should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and plaintiff's Complaint is dismissed with prejudice.

Judgment shall be entered accordingly.

_____
UNITED STATES MAGISTRATE JUDGE


Dated this _6th_ day of September, 2005.